# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROBERT BOSCH LLC, a
Delaware limited liability company,

     Plaintiff,                                    Case No.

v.                                                            Hon.

AUTOLIV-NISSIN BRAKE SYSTEMS
AMERICA LLC, an Ohio limited liability
company, and EDUARDO HERRERA,
a Michigan citizen,

     Defendants.

_____

S. Thomas Wienner (P29233)
Seth D. Gould (P45465)
Daniel K. Beitz (P47451)
WIENNER & GOULD, P.C.
*Attorneys for Plaintiff*
950 W. University Dr., Ste. 350
Rochester, MI 48307
(248) 841-9400

_____

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## DEMAND FOR JURY TRIAL

_____

Plaintiff Robert Bosch LLC ("Bosch"), for its complaint against Autoliv-Nissin Brake Systems America LLC ("ANBS") and Eduardo Herrera ("Herrera") (jointly, "Defendants"), states:

## NATURE OF THE CASE

1.    This is an action based upon: (1) the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*; (2) the Computer Fraud and Abuse Act, 18 U.S.C. §1030; (3) the Michigan Uniform Trade Secrets Act, MCL 445.1901 *et seq.*; and (4) common law claims of breach of contract, unfair competition, unjust enrichment, and tortious interference. Bosch seeks damages, injunctive relief, and other appropriate relief to stop Defendants' use, disclosure and misappropriation of Bosch's confidential and trade secret documents and information.

## PARTIES

2.    Plaintiff Robert Bosch LLC is a Delaware limited liability company, with offices at 38000 Hills Tech Drive, Farmington Hills, Michigan 48331. Bosch's sole member is Robert Bosch North America Corporation, a Delaware corporation with its principal place of business at 38000 Hills Tech Drive, Farmington Hills, Michigan 48331.

3.    Defendant ANBS is an Ohio limited liability company whose principal place of business is located at 2001 Industrial Dr., Findlay, Ohio 45839-0763.

4.      Defendant Eduardo Herrera is a citizen of Michigan.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

6.      This Court has personal jurisdiction over ANBS because it conducts business in this District, and over Herrera because he resides and conducts business in this District.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events and transactions giving rise to Bosch's claim occurred in this District and Defendants reside in this District for venue purposes.

## FACTUAL BACKGROUND

Bosch's Integrated Power Braking Trade Secret Technology

8.      Bosch manufactures, markets, and sells automotive, consumer, and industrial technology products throughout the United States, including vehicle parts and systems.

9.      Bosch's Chassis Systems Control division develops and manufactures numerous automotive systems, including adaptive cruise control systems, forward collision warning systems, electronic stability control systems, brake actuation systems, and electronic brake boost systems.

10.     This lawsuit concerns Defendants' misappropriation of confidential Bosch trade secret information pertaining to the next generation of brake technology called integrated power braking ("IPB"). That information provides Bosch with a competitive advantage in the highly competitive electric and hybrid electric vehicle marketplace.

11.     IPB represents a significant advancement in braking technology because it merges two separate systems, electronic stability control and electric brake booster, into a single integrated module.

12.     An electric brake booster is an enhanced master cylinder setup used to reduce the amount of pedal pressure needed for braking. It employs a booster which acts with the master cylinder to give higher pressure to the brakes and/or lower force applied on the brake pedal through a brake booster push-rod.

13.     Electronic stability control, also referred to as an electronic stability program ("ESP"), is a computerized technology that improves a vehicle's stability by detecting and reducing loss of traction.

14.     ESP automatically applies the brakes to help steer the vehicle when the system detects loss of steering control. ESP automatically applies braking to wheels individually, such as the outer front wheel to counter oversteer or the inner rear wheel to counter understeer.

15.    Bosch has devoted significant resources to developing next generation IPB technology, which is more compact and generates brake pressure faster than competing products.

16.    Bosch's innovative IPB technology is suitable for all powertrains, and is particularly useful in hybrid and electric vehicles.

17.    In combination with ESP, Bosch's electronic brake booster supplies the braking-system redundancy utilized in vehicles with autonomous driving functionality.  Currently vehicles with autonomous driving functionality are on the roadways, and the market for such vehicles will continue to expand.

18.    With IPB technology, if one of the two components fails (*i.e.,* ESP or brake booster), the other can safely decelerate and stop the self-driving car without the driver having to intervene.

19.    Automated driving affects every aspect of the car – powertrain, brakes, steering – and requires comprehensive systems expertise.

20.    As vehicles gradually take over more and more driving tasks, safety-critical systems such as brakes must satisfy special requirements.

21.    In addition to improved stopping time, Bosch's IPB technology can increase efficiency in electric and hybrid electric vehicles through regenerative braking.

22.    Regenerative braking recovers braking energy and converts it into electricity, which extends an electric vehicle's range.

23.    In the highly competitive hybrid and electric vehicle industry, vehicles will need to recover as much energy as possible while braking.

24.    Bosch's IPB is the world's first series-produced IPB system, and Bosch is currently the leading supplier of this technology.

25.    Several other suppliers, including ANBS, are currently competing with Bosch in this highly competitive marketplace.

26.    ANBS was a new company which did not come into existence until March 31, 2016, when Autoliv, Inc., a manufacturer of automotive safety systems, finalized its joint venture with Nissin Kogyo, a braking system supplier, to form ANBS.

<u>Bosch Takes Extraordinary Steps to Protect its Confidential Information.</u>

27.    Bosch has acquired unique capabilities and achieved a leading position in the highly competitive automotive industry by investing significant time, effort, and money in developing intellectual property, trade secrets, and technical and proprietary information.

28.    Bosch's intellectual property, trade secrets, and technical and proprietary information include, without limitation, design data for the hardware, software, and control aspects of Bosch's IPB technology.

29.    This information is comprised of complex hardware and software designs, computer-aided design (CAD) models, electrical schematics, simulations, printed circuit board (PCB) fabrication data, and other data and information relating to the design and development of cutting-edge IPB products.

30.    The above-described information is confidential, proprietary, and trade-secret information that has given Bosch an opportunity to obtain an advantage over competitors who do not know or use that information.

31.    The above-described information does not consist of trade or job skills that one generally acquires simply by virtue of on-the-job training or industry experience.

32.    Bosch consistently uses several measures and practices to maintain the secrecy and confidentiality of its intellectual property, trade secrets, and technical and proprietary information, including the above-described IPB information.

33.    For example, Bosch employees, upon commencement of employment, are required to execute an Agreement on Confidentiality (the "Confidentiality Agreement").

34.    Employees acknowledge that Bosch confidential information includes, but is not limited to:

▪ Advance product plans

- Unpublished financial data

- Unannounced plant construction, expansion, or improvements

- The amount of capital investment for new, expanded, or renovated facilities

- Proposed product prices and warranties

- Projected earnings

- Major upcoming changes in management, policy, or product

- Data showing the composition of the workforce

- Drawings, specifications, or operating characteristics of products or proposed products

- Test data

- Manufacturing methods, and

- Information on suppliers' prices, quantities, and relations. (Ex. A.)

35.    Each Confidentiality Agreement expressly prohibits employees from disclosing any intellectual property, trade secrets, or technical, proprietary, or other confidential information ("I will not use [Bosch's] Confidential Information for myself or for others or divulge or convey it to others during my employment with [Bosch].")  Ex. A, Section 4.

36.    The Confidentiality Agreement further requires that, upon termination of employment from Bosch, each employee "will promptly deliver to [Bosch] all

Confidential Information which is in my possession or under my control, and I will not make or retain any copies of any Confidential Information." Ex. A, Section 4.

37.    As a further control, Bosch's written policy contains a prohibition on the use of personal hardware or software on company electronic systems. Furthermore, with respect to Bosch's own hardware, peripherals, and software, employees are prohibited from making any modifications, additions or deletions without express approval. More specifically, there is a blanket prohibition on the installation of communications programs such as internet access software.

38.    Bosch's Code of Business Conduct also specifically addresses the treatment of confidential information: "Confidential company information must be kept secret. This obligation remains in effect after [the] employment contract ends." (Ex. B.)

39.    Because Bosch operates in an environment where its competitors are intensely interested in obtaining financial and operational information, employees who are privy to such information are instructed to safeguard it and protect against its disclosure.

40.    Bosch has established a Data Security Organization ("DSO") whose mission is to promote security awareness and implement controls to safeguard data and intellectual property in Bosch's business units.

41.     Bosch stores its confidential information and trade secrets on a private, confidential system that is hosted on an internal server to which only authorized Bosch personnel have access.

42.     In order to access Bosch's server, the accessor must be granted access by Bosch.

43.     Additionally, the accessor must be given login credentials, which are only available from Bosch's information technology department.

44.     In other words, the only manner in which Bosch's server and the above-described confidential information and trade secrets stored there may be accessed is to possess login credentials which are provided only to authorized Bosch personnel.

45.     Additionally, even those Bosch personnel authorized to access Bosch's server via login credentials do not have access to the entire server.

46.     Different personnel are permitted access to different portions of Bosch's server depending on the level of access necessary to perform their respective job duties.

47.     In other words, Bosch tailors each employee's level of access depending on that employee's role at Bosch.

48.     Bosch's Chassis Systems Control division has established a detailed procedure under which employees are required to request access rights to particular

folders on Bosch's server.  The request must be evaluated and granted by the responsible Bosch manager before the employee is permitted access.

49.   Bosch's server is Bosch's private network infrastructure.  It is not accessible via an internet browser. Rather, authorized Bosch personnel may remotely access the Bosch Server via a virtual private network ("VPN").  Bosch personnel accessing the server via a VPN are subject to the same limitations and protocol outlined above.

Defendants' Wrongful Misappropriation of Bosch's Trade Secrets

50.   Bosch hired Herrera as a Senior Engineer on or about April 18, 2005.

51.   At the commencement of his employment, Herrera signed the Confidentiality Agreement, and agreed to maintain the confidentiality and secrecy of Bosch's confidential information and trade secrets. (Ex. A.)

52.   Bosch employed Herrera for approximately 13 years in various engineering capacities, until October 31, 2017 when Herrera left Bosch to join ANBS.

53.   During Herrera's tenure at Bosch, he worked in the active safety unit of Bosch's Chassis Systems Control division. Herrera's job responsibilities included analyzing and developing requirements for brake systems for automated vehicles.

54.   As a result of Herrera's job responsibilities, he obtained access to confidential Bosch information and trade secrets relating to various Bosch braking systems products.

55.   Bosch recently learned that, shortly before he left Bosch to join ANBS, Herrera accessed Bosch's server and opened numerous proprietary and sensitive files (approximately 800 files).

56.   Upon information and belief, Herrera copied many of these proprietary and sensitive files to external storage devices.

57.   Upon information and belief, Herrera misappropriated files containing, *inter alia,* proprietary Bosch pricing and project management information, as well as Bosch engineering trade secrets and manufacturing processes.

58.   The information Herrera misappropriated is not publicly available, and is confidential information and trade secrets of Bosch.

59.   There was no valid business reason for Herrera to access and copy such files other than to take Bosch's confidential IPB information with him and share such information with ANBS, to assist ANBS in developing IPB technology and to damage Bosch's competitive advantage.

60.   Several of the files Herrera accessed contain specific IPB project information.

61.     Herrera ***did not*** work on the IPB development project he accessed.

62.     In fact, many of the files that Herrera opened have ***nothing to do*** with the work that Herrera was performing immediately prior to his departure from Bosch.

63.     Without Bosch's specific and unique confidential information and trade secrets, a competitor such as ANBS would have great difficulty designing or developing the same products or providing the same services as Bosch.

64.     Despite written demand made by Bosch, Defendant Herrera has failed and/or refused to acknowledge his improper actions, and he and ANBS have failed and/or refused to return Bosch's confidential information.

65.     Upon information and belief, ANBS and Herrera continue to utilize Bosch trade secrets, proprietary information, and technology in violation of the Confidentiality Agreement and applicable law.

66.     Apart from the information intentionally misappropriated as described above, the full scope of the confidential information and trade secret information misappropriated by Defendants is currently unknown.

67.     Until recently, ANBS did not even have an IPB product line.

68.     Herrera is not the only Bosch employee to join ANBS.

69. Before Herrera's departure, a number of individuals who previously worked in Bosch's chassis control division similarly resigned and accepted employment with ANBS.

70. Herrera and other former Bosch employees working at ANBS are now in a position to help ANBS develop this nascent line by virtue of their familiarity with Bosch's trade secrets.

71. Upon information and belief, ANBS hired Herrera and other Bosch employees to exploit: (a) their access to and knowledge of Bosch's trade secrets and confidential information to gain an unfair competitive advantage over Bosch in the sale of IPB systems, and to allow ANBS to develop its own IPB system on the back of Bosch's proprietary knowledge and know-how; (b) their inside information concerning Bosch's IPB system and its customer-specific pricing and pricing methodologies; and (c) their knowledge of and relationships with Bosch's key employees.

72. ANBS continues to solicit other Bosch employees.

73. Upon information and belief, ANBS also has solicited Bosch customers in an attempt to win their business away from Bosch.

74. As a consequence of Defendants' actions, Bosch faces the prospect of losing its most critical trade secrets and proprietary information in its IPB business

to a competitor, and risks losing the value of the millions of dollars it has invested in developing this business.

## COUNT I
## BREACH OF CONTRACT (HERRERA)

75.    Bosch incorporates here the allegations contained in Paragraphs 1 through 74 as if they were fully set forth.

76.    Herrera entered into a Confidentiality Agreement which prohibits him from disclosing and/or using Bosch's confidential and proprietary information, technology, know-how and processes during and after his employment with Bosch without Bosch's express written consent.

77.    All of the proprietary processes and techniques and confidential information developed by Bosch are the property of Bosch and must, by law and written agreement, be kept strictly confidential and out of the hands of Bosch's customers and competitors.

78.    As described above, Herrera obtained and used proprietary Bosch information without Bosch's permission.

79.    Herrera's conduct, as described herein, constitutes a breach of the Confidentiality Agreement.

80.    Herrera's breach of contract has directly and proximately caused Bosch to suffer damages.

81.    Herrera has failed and/or refused to return Bosch's confidential information and trade secrets.

82.    Instead, upon information and belief, Herrera and ANBS continue to use Bosch's confidential information and trade secrets to unfairly compete against Bosch.  Accordingly, Bosch is continuing to sustain damages.

83.    Herrera's wrongful conduct also has caused Bosch to sustain lost profits, increased labor and administrative costs, and other consequential and incidental damages.

### COUNT II
### VIOLATION OF THE DEFEND TRADE SECRTS ACT OF 2016
### 18 U.S.C. §§ 1836 *et seq*. (BOTH DEFENDANTS)

84.    Bosch incorporates here the allegations contained in Paragraphs 1 through 83 as if they were fully set forth.

85.    Defendants are obligated under the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836 et seq. (the "Defend Trade Secrets Act") not to disclose or misappropriate trade secret information belonging to Bosch.

86.    The files and information Defendants obtained from Bosch's server, including technical and engineering information and designs, are trade secrets within the meaning of the Defend Trade Secrets Act.

87.    These trade secrets relate to Bosch products used in interstate and foreign commerce.

88.     Defendants acquired knowledge of information belonging to Bosch that constitutes a "trade secret" inasmuch as that information: (1) derives independent economic value from not being generally known to, and not readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

89.     At all times, Bosch has taken steps which were reasonable under the circumstances to maintain the secrecy and confidentiality of its confidential information and trade secrets and maintain with care any documents embodying the same, requiring password access to the Bosch server, requiring confidentiality agreements, and limiting access to sensitive information, among other measures.

90.     Defendants knew or had reason to know that Bosch considered and treated the information as confidential and secret.

91.     The confidential information and trade secrets Defendants obtained from the Bosch server are invaluable to Bosch and crucial to its business functions and competitive position.

92.     Defendants acquired the confidential information and trade secrets by improper means.

93.     Defendants' conduct constitutes misappropriation of trade secrets under the Defend Trade Secrets Act of 2016.

94.    Defendants' misappropriation of Bosch's trade secrets was willful and malicious.

95.    As a direct and proximate result of Defendants' willful and malicious misappropriation, Bosch has sustained and continues to sustain irreparable harm and is entitled to recovery of the damages sustained, including attorneys' fees, treble damages, and all other relief this Court deems just and proper.

**COUNT III**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT,**
**18 U.S.C. § 1030 (HERRERA)**

96.    Bosch incorporates here the allegations contained in Paragraphs 1 through 95 as if they were fully set forth.

97.    Bosch utilizes protected computers in its interstate and foreign commerce activities, which are connected to the internet.

98.    Defendant Herrera had access to Bosch's protected computers.

99.    Bosch policy prohibits the use of its information technology to transmit or copy, among other information, trade secrets or proprietary information without Bosch's prior authorization.

100.   Prior to separating from Bosch, and in violation of Bosch policy, Defendant Herrera intentionally accessed Bosch's protected computers and the Bosch server without authorization or in a manner that exceeded his authorization in order to obtain confidential information and trade secrets.

101.   Defendant Herrera knowingly and with the intent to defraud obtained information of value from Bosch, including the confidential information and trade secrets described in this Complaint.

102.   Bosch has suffered damages as a direct and proximate result of Defendant Herrera's unauthorized access and/or access in a manner that exceeded his authorized access.

**COUNT IV**
**VIOLATIONS OF THE MICHIGAN UNIFORM TRADE SECRETS ACT,**
**MCL 445.1901 et seq. (BOTH DEFENDANTS)**

103.   Bosch incorporates here the allegations contained in Paragraphs 1 through 102 as if they were fully set forth.

104.   Bosch created and developed unique information, programs, methodologies, techniques, and processes for IPB brake systems.

105.   The unique engineering and design methods, techniques and processes developed by Bosch are "trade secrets" within the meaning of the Michigan Uniform Trade Secrets Act, MCL 445.1901 et seq., in that they are not readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

106.   Bosch made reasonable efforts to maintain the secrecy of its trade secrets.

107.   Bosch's trade secrets were only disclosed to Bosch employees on a need-to-know basis and only after receiving from each employee a signed confidentiality agreement.

108.   Defendants have obtained possession and knowledge of Bosch's trade secrets through improper means, including theft, misrepresentation, and breach of duty.

109.   Defendants were at all relevant times aware of the trade secrets that they improperly obtained.

110.   Defendants have used and disclosed Bosch's trade secrets for their benefit, to the great expense and substantial detriment of Bosch.

111.   Defendants' misappropriation, dissemination, and use of Bosch's trade secrets has caused Bosch to incur actual losses, including, but not limited to, the loss of the expenses incurred in developing the misappropriated trade secrets, the loss of Bosch's competitive business advantage, and the loss of revenue associated with IPB system sales.

112.   In addition to the actual damages caused by Defendants' misappropriation and/or dissemination of Bosch's trade secrets, Bosch is entitled to damages arising out of the unjust enrichment caused by Defendants' misappropriation.   Such damages include, but are not limited to, the profits generated by Defendants' use of Bosch's trade secrets.

## COUNT V
## COMMON LAW UNFAIR COMPETITION (BOTH DEFENDANTS)

113.    Bosch incorporates here the allegations contained in Paragraphs 1 through 112 as if they were fully set forth.

114.   The conduct of Defendants, described above, constitutes common law unfair competition.

115.   As a direct and proximate result of the acts and course of conduct of Defendants, Bosch has suffered and will continue to suffer financial loss, loss of goodwill, and an irreparable loss of the confidentiality of its proprietary information.

## COUNT VI
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (ANBS)

116.   Bosch incorporates here the allegations contained in Paragraphs 1 through 115 as if they were fully set forth.

117.   Herrera has breached the Confidentiality Agreement.

118.   Upon information and belief, ANBS was aware of Herrera's Confidentiality Agreement and the restrictive covenants therein, and induced Herrera to breach those covenants in violation of his contract with Bosch.

119.   Defendants' conduct has led to actual and threatened misappropriation of Bosch's trade secrets, proprietary information, reputation, and goodwill.

120.   Upon information and belief, ANBS intentionally interfered with Herrera's Confidentiality Agreement with Bosch, and acted with malicious intent to inflict harm on Bosch.

121.   As a direct and proximate result of ANBS's conduct, Bosch has suffered and will continue to suffer financial loss, loss of goodwill, and an irreparable loss of the confidentiality of its proprietary information, for which it has no adequate remedy at law.

## COUNT VII
## UNJUST ENRICHMENT (BOTH DEFENDANTS)

122.   Bosch incorporates here the allegations contained in Paragraphs 1 through 121 as if they were fully set forth.

123.   Defendants have received and continue to receive a significant benefit from the proprietary information and trade secrets that they misappropriated from Bosch.

124.   It would be inequitable and unjust for Defendants to retain such benefits without providing full compensation to Bosch.

125.   Defendants' unjust and wrongful conduct has proximately caused significant damages to Bosch, including lost profits, increased labor and administrative costs, and other consequential and incidental damages.

## COUNT VIII
## INJUNCTIVE RELIEF

126.   Bosch incorporates here the allegations contained in Paragraphs 1 through 125 as if they were fully set forth.

127.   Bosch seeks an injunction restraining Defendants from using Bosch's confidential and proprietary processes, and requiring Defendants to return all of Bosch's property and proprietary information.

128.   Defendants have demonstrated by that they have no intention of complying with applicable laws, and Defendants will continue to violate them in the future unless they are enjoined from doing so.

129.   There is a strong likelihood that Bosch will succeed on the merits given Defendants' clear violations of law.

130.   Defendants' actions will likely cause Bosch irreparable injury that cannot be remedied at law.

131.   Greater harm would be inflicted on Bosch by the denial of injunctive relief than would be inflicted upon Defendants if such injunctive relief were issued.

132.   There would be no harm to the public interest if an injunction were issued.

## REQUESTED RELIEF

WHEREFORE, Bosch respectfully requests that this Court:

A.   Enter a judgment awarding actual damages suffered by Bosch, treble damages, and costs,  interest,  and attorneys'  fees incurred in connection herewith;

B.   Enter a preliminary and permanent Injunction:

    i.   Enjoining Defendants from (a) possessing Bosch's confidential information or trade secrets, and/or (b) utilizing the confidential information or trade secrets in unfair competition against Bosch.

    ii.   Requiring Defendants to immediately (a) return all confidential information and trade secrets they obtained from Bosch, (b) destroy all copies of such confidential information and trade secrets, and (c) identify any and all persons and entities with whom Defendants have shared such confidential information or trade secrets, or any information contained within such confidential information of trade secrets; and

C.   Grant Bosch all other relief as this Court deems just and proper.

/s/ S. Thomas Wienner (P29233)
WIENNER & GOULD, P.C.
Attorneys for Plaintiff
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400; Fax:  652-2729
twienner@wiennergould.com

Dated:   April 3, 2018

24

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Robert Bosch LLC, by its attorneys, Wienner & Gould, P.C., hereby demands a trial by jury in the within cause of action.

<u>/s/ S. Thomas Wienner (P29233)</u>
WIENNER & GOULD, P.C.
Attorneys for Plaintiff
950 W. University Dr., Ste. 350
Rochester, MI  48307
(248) 841-9400; Fax:  652-2729
twienner@wiennergould.com

Dated:   April 3, 2018